So, thank you very much. Thank you very much. Case 18-1811, Twyman v. S&M Auto Brokers, The Appeal of Joel Brodsky. Good morning. May it please the Court, Brian Brown for Appellant Joel Brodsky. There are two primary issues that we'd like to address during today's argument. First, we'd like to briefly address Appellant's argument that the District Court erred in finding that Brodsky acted in bad faith, focusing on Brodsky's objective efforts to de-escalate and mitigate. Second, we will address why Appellant believed that the $50,000 monetary sanction and the requirement to attend an anger management course should be vacated, given existing precedent. Could I just quickly ask you, in the last paragraph of its order, the Court says that it grants the plaintiff's motion for sanctions a motion that had been filed under Rule 11. Would you agree that she had the authority to enter these sanctions under Rule 11? Not under Rule 11, Your Honor. Again, those issues, one thing that I think we'll get to in terms of the de-escalation and mitigation is that Mr. Brodsky actively participated in the resolution of the attorney fee portion of this case. And by participating, I mean contributed to. And so that's something, again, that I believe the sanctions, as ordered, were based upon 1927 and inherent power. So regarding point one, again, we've conceded that Mr. Brodsky was overzealous. While we have attempted to explain and provide context for his frustration with specific reference to the record, we are not necessarily trying to justify or excuse that frustration. Similarly, Mr. Brodsky has conceded that mistakes may have been made in the underlying litigation. Again, we address the due diligence conducted by Mr. Brodsky in related information and documentation. Counsel, if your client had gotten the protections of the criminal proceeding here, are you saying that there wasn't enough evidence to satisfy it beyond a reasonable doubt, or they didn't have notice, or they was forced to testify? I mean, it seems to me you haven't quite identified why it would have benefited your client. I think one of the difficulties that exists is the nature of an evidentiary hearing before the district court. Part of the analysis of civil contempt sanctions versus criminal contempt sanctions is not knowing going in which of those are going to be addressed. In this case, this was routinely referred to as an evidentiary hearing addressing the motions for sanctions. But unquestionably, Judge Kendall stated that she was maintaining authority under her inherent power to address what she viewed as issues undermining the integrity of the court. What wasn't discussed was the aspect of contempt or some sort of punitive sanction. And so as we advised Mr. Brodsky to de-escalate and attempt to mitigate, I think we continued to view this as inherent power. What would you have done differently? I think had we known that it was going to be a punitive fine as opposed to something more reasonably calibrated. How would you reasonably calibrate something wherein a court attributes three quarters of the docket entries to his behavior? By my calculation, it's approximately 150 of the 200 docket entries. In light of that, you know, enormous number of documents and proceedings attributed to bad behavior. How can we say that the amount was excessive when it comes out to about $333 for each docket entry? The $333 is throwing me off. I apologize for that.  What I would suggest is after he was reprimanded in early April in successive hearings, when we start counting up those docket entries, we then start getting to almost immediately thereafter, certainly promptly thereafter, the light bulb goes off. And he contacts his legal malpractice carrier. They retain me. He retains separate independent counsel. And at that point, meaningful objective steps are taken. Attempts to withdraw the offending pleadings. Resolving the issues from a monetary standpoint with the expert. Acknowledging despite the fact he has a 20-year relationship with this client. Listening to the advice of counsel. And immediately withdrawing and working with the new counsel to get the underlying case resolved. And ultimately on the fee issue, not simply participating in that settlement, but contributing to that settlement. When offending conduct occurs before the court, in other words, when the court itself is a witness to the offending conduct, why do you think there would be a need for fact findings beyond a reasonable doubt? Has that ever been required when the conduct occurs in front of the court? I think when we look at, so beyond a reasonable doubt, or if we go with clear and convincing, I... Part of the issue is I would struggle with a specific statement of charges, which would have been helpful had we been aware of the scope of potential penalties, including the anger management, including a fine of $50,000. Has he completed the anger management classes? So he's done an online class. Does that not count? I think that's something we would seek some direction for. Candidly, I don't think... I think when Judge Pendle made the direction regarding anger management, one of the issues that we... One of the reasons why we take issue with that is the aspect of whether or not she's truly looking at having some sort of deeper psychological profile or somehow addressing the frustration that we reference. Traditional anger management, in terms of a class, there wasn't real specific guidance, but the reality is one of the reasons we argue that was not necessarily tailored to what was going on here was that if you look at those classes and what he participated in, 70% of that course was dedicated to what would be... exist in an assault and battery case where they're talking about physical manifestation. But we can't unring that bell. I mean, he's taken the class. I mean, the fine is a different thing. So by completing it, the idea of unringing the bell, I do believe that the court could vacate that portion. It doesn't have him untake the course, but the aspect, as Martinez discusses, is that many... The order itself can be the damage, and he has had that in terms of many, say, several other cases. Lawyers or parties have brought that order to the attention of the court with specific reference to the anger management course, indicating that it reflects some sort of psychological... That, for me, again, if we're looking strictly at Mr. Brodsky, I, as someone who defends lawyers, who gets appointed to defend lawyers, I have concerns on the precedent end of that in terms of if it's anger management. Could a judge go farther and order an IME? Order a what? Sorry, an independent medical exam, some sort of psychological profile. That, to me, certainly gets into a range. Well, that would be a different case. A medical exam versus you've exhibited pretty angry and inappropriate behavior in my courtroom and take a course is a lot different than subject yourself to an examination. So ordering to go see a psychiatrist, maybe closer in terms of an area that, again, in this type of order, especially when we not only theoretically have other forms where that is addressed, it actually exists here. We have a citation before the Northern District of Illinois, and we have now an open claim with the ARDC. What information did Judge Kendall have about your client's financial resources? None. Other than what? That he took the vacations abroad. Took the vacations abroad. And I would suggest that $50,000 is life-altering for him and would be life-altering for the vast majority of attorneys in this circuit. I thought he owned a vacation home in France. He does not own a vacation home in France. Or Italy, I'm sorry. In Florence. Wrong country. That's a big-ticket item. No problem. And that has been, again, I met Joel 18 months ago in April 2017, and parsing through some of his boasting to boil down more appropriately what his ability to pay may be has not always been easy even for me.  He does not own a home. His wife is from Europe. Her family has their extended family. They have the ability to stay in a home with extended. In Florence. It's an apartment through extended family. He has no ownership of that. You know, he seems to assert that the settlement between the parties addressed any sanctionable behavior on his part, but how can a settlement between private parties address behavior that impugns the integrity of a court? How is that even possible? So I think. You know, you can behave like a lunatic somewhere, and then you settle, and that's that. My apologies for interrupting. No, no. I was interrupting you. So I think what we suggest, and certainly this court in deciding fury addressed some issues with respect to Goodyear, but I think we do look at Goodyear as a case. And I'm not suggesting he acted like a lunatic. I'm just trying to phrase the question to its nth degree. So I think in the context of someone coming into court and, for example, I absolutely agree that Judge Kendall is entitled to her subjective view of how he acted during the evidentiary hearing. And that trumps. It's her courtroom. That trumps any sort of article that addresses whether or not he was contrite. But the objective acts, the de-escalate. The objective acts to mitigate, I do think, in evaluating the record as a whole, should be viewed as something that cut against bad faith conduct. You know, you asked for five minutes rebuttal, and your yellow light has not gone on. I've been tracking it, Your Honor, and I would happily answer your questions in lieu of additional rebuttal. Oh, okay. If there are no further questions, I'll save my last two minutes for rebuttal. Well, I think you have a little more than that, actually. Okay. Okay. Thank you. Hi, Mr. Schreiner. Good morning, Your Honor. How are you? I'm well, thank you. Hope you're well. May it please the Court. I want to start out by saying that this is an interesting case, obviously, in lots of different ways. One of them is the appellant's challenge in his reply brief to Judge Kendall's fact-finding never raised in his principal brief. He's forfeited the issue. She found facts, and I don't think they're subject to challenge. I don't think the challenge has been very effective, but I don't think they're subject to challenge. This is a case in which, and I think Judge Kendall's opinion, I can't improve on it. She lays out what she went through. I wasn't there, and I would rely on it, and how this built up. I mean, this didn't just happen one day in April. She was aware that, in her view, the lawyers weren't behaving very well. She chastised them when they were in court. She ultimately came to pay some close attention, because motions were filed by Mr. Brodsky, to what the source of that was, and she concluded, and she told him so, it's you. I think it's you. We're going to have a sanctions motion about you. And in terms of notice of what that hearing was going to be about, we've laid out, in a couple of short quotations on pages 7, 8, and 9 of our brief, what she said in April, and what she said in May, before the July hearing, about what she wanted to get into. It's my strong opinion that Mr. Brodsky has been overly aggressive in this case. He's not following the rules of professional conduct, and that he is filing a lot of motions to exacerbate the discovery process, and it's going to be a hearing primarily to determine whether sanctions should be applied to him. And, of course, because I'm an open-minded judge, I need to look into accusations against the experts. Accusations that he made, which are very serious, if that expert is to be used. And if they're false, that's more of a situation for you, she said to him, because if he made false accusations against the witnesses in the case, that is also an obstructive behavior. She said, this is what bothers me, and we're going to do this. And ultimately, in May, there's another long quote where she says the same thing a little more elaborately on page 9. And we're going to have this hearing, she says, fine, you've settled the case. This is going to get resolved, whether you settle this case or not, because this is obstructive behavior that I have to do something about. She made that perfectly clear. Is a court, in this situation, required to make findings regarding the need for a particular amount of sanctions imposed? In other words, did Judge Kendall have any evidence regarding the need for a $50,000 sanction in particular? Did she consider on the record somewhere whether some lesser amount would suffice? I find nothing on the record to that effect. But, Your Honor, there is. There was a question you asked at the beginning, my friend, about whether or not this could have been sustained under Rule 11 had the case not been settled. Because there was, of course, a Rule 11 motion filed by the plaintiff against him. And the answer is clearly yes. And if you look at Rule 11, Rule 11 says that the sanction should be enough to affect behavior both of the attorney, who in this case signed something that she found to be false and frivolous, to affect his behavior and to affect the behavior of others who become aware of this. He has called the amount of the sanction unprecedented. But, of course, we have that Fury case where the plaintiff lost a $260,000 jury verdict on account of the bad behavior of plaintiffs. Absolutely. And the counsel... Five times what the sanction was here. And it's very clear from the case law. First of all, the facts aren't challenged, but they can only be challenged under a clearly erroneous standard and it clearly can't be done. What she found, and she laid out what she found, she found that the allegations against Chezniak were unsubstantiated by any credible evidence, wholly irrelevant to his qualifications because he was being attacked as the plaintiff's expert, and thus, she said, she found, asserted for no other reason than to harass and intimidate the expert. I mean, that's classic obstructive behavior that falls within the authority of the court. Counsel, let me ask you a question about the amount. Yeah. So in calibrating the amount, one thing that Judge Kendall said was that he had been sanctioned, she said, it's been brought to my attention that he has been sanctioned in state court a number of times and clearly not enough to deter his behavior. I didn't see anything about how much those sanctions were, and I'm wondering whether the $50,000 was an attempt to up the ante from whatever that baseline was. I didn't see it. I don't know, Judge Kendall didn't say, but it seems to me that what was $10,000 in 2004, in the Methods case, Judge Evans' case, where they upheld the $10,000 sanction, this court in a very recent case maybe one of the cases, maybe it was the, well, the very recent case upheld a $17,000 sanction. I mean, it is not, you know, what is necessary in the judge's opinion, and we're in this area where the standard of review is abuse of discretion. No reasonable judge could have done what Judge Kendall did. What if she'd made it $100,000? What would your position be? I think if it got to be $100,000 instead of $50,000, you might reasonably require her to say more about what happened, but $50,000 is a lot of money, but somebody needed to get Mr. Brodsky's attention. That's clearly what she's saying here. He isn't listening. I told him as we were going along, straighten out, don't do this anymore, and he kept it up. And I don't want this happening in my court, and until I do something to get his attention that's effective and to tell other people who come to practice in this court what my expectations are and how they shouldn't behave, I don't think it's effective. Should the reasonableness of the fine depend at all on his ability to pay, or is it calibrated solely to the seriousness of the offense? I think ability to pay would have been something he might have raised. He might have raised it if he thought $50,000 was too much and he had something to say about it. He might have asked her to reconsider. He didn't file a motion to reconsider. Are there any cases that support the use of the court's inherent authority to order mental health treatment? Well, I'm not sure, Your Honor, that anger management courses are mental health treatment. Oh, really? I don't know. I've never been subjected to it. I've never seen you angry, Mr. Sheldon. I see celebrities go into anger management course all the time right after they apologize if they've offended anybody by their horrible behavior, which sounded a little bit like Mr. Brodsky's apology here, which Judge Kendall wasn't impressed by. It is just something needs to be done, and I don't know. I hope you don't need to find an appellate court opinion that says that a particular sanction that she decides to impose has been approved by an appellate court before. It seems to me that at one level, anger management class is exactly what Mr. Brodsky needs. He has justified everything he's done from the beginning, before Mr. Brown was involved, up to and including in the reply brief in this case, which is extraordinary, on the ground that he is so frustrated by these laws that Congress keeps passing that allow plaintiffs to get a lot of money and lawyers to get rich on his clients, that he had to do something about it. That's his justification. Including smear the expert. Right. It's anger. And that's what I saw in the pivot in Judge Kendall's view of the case. This is not just aggressive, acrimonious lawyering. Which is bad enough. Right, which would justify a sanction on its own, but I viewed her reaction in the totality of this record, and the amount of the sanction as a consequence of his attacks, largely of his attacks on the expert witness, which really strike at the integrity of the judicial proceeding, over and above just attacking opposing counsel. And that's where I think her fact-finding is really clear. She says, this was done, there's no justification for it. I've looked at the material he submitted. You know, he was accused of doing something somewhere else. That's the kind of evidence he has. It's not evidence that Mr. Sherzodniak did anything wrong. And it was intended, she said, it was not supported, and it was intended to intimidate him. There is one of the cases that we cited in our brief, where sanction was based on an intimidation of the witness. I mean, that is classic behavior that needs to be sanctioned, and that the court needs to invoke its inherent authority to do. And it is, as you say, at some level, I guess, when we get into this business, we might expect to run into somebody like Mr. Brodsky now and again and have to deal with it. But to direct his anger and his retribution and his intimidation to a witness in the case really strikes at the heart of what would have been the proceeding in front of Judge Kendall had she not persuaded everybody this case really needs to get settled. Do you see a difference between an online anger management class and an actual class where... I mean, I don't even understand how you do an online... I mean, do you talk to your computer? I don't know, Your Honor. I hadn't heard before today that he took an online course. I didn't know whether he took it or not. I'm glad somebody asked. I know people who do their CLE programs online, and I don't think that involves paying much attention to what's going on. I wouldn't think it would be terribly effective done online, frankly, but I don't know, just to be frank about that. So, you know, I think that, you know, the court... You had your opinion for the court in Peoria, Your Honor, where you talked about Monday morning quarterbacking and the role of the district judge as referee in these battles. This is that case in spades. And Judge Kendall, I think, behaved with considerable restraint. She didn't fire something off on the spur of the moment. She told him what she was going to do. She gave him notice. She had a hearing. She listened to what he had to say, which wasn't much. She didn't put in any evidence. And then she took some time coming to her conclusions and explained carefully what she was doing and why she was doing it. She didn't explain why the $50,000. I think it's perfectly clear that she thought something of that nature was necessary to get through to Mr. Brodsky, and I think she had every right to do that. So I thank you, Your Honor, for that. Thank you. Thank you, Your Honor. I think those are all the questions. Come on up, Mr. Brown. Thank you. Really the only point on rebuttal that, again, I would like to mention in comparing Fury and in response to his counsel is this isn't a scenario where Mr. Brodsky continued down a scorched earth path. He did not. It was 18 months, wasn't it? No, 18 months is when I met him. So the case, in terms of when he reached the point where he early April when he involved us. How many months had all this been going on? I thought it was 18 months. The case was filed in August of 2016, and this was April of 2017. So eight months. Well, I think it actually was filed maybe in June or July, and August is when the court made her first reference to the counsel battling unprofessionally. There was an order that addressed that that went to some certain discovery that was issued while Mr. Brodsky was on an extended vacation. But the reality is that, yes, should he have taken his foot off the gas earlier? Absolutely. You know, Mr. Schreiner brought up something very interesting. Mr. Brodsky waited until his reply brief to complain about the fact findings. Are those issues waived? We don't believe so, Your Honor. We believe, similar to standing down at the evidentiary hearing, that the record does encompass appropriate information and certainly references the, not simply references, it reflects his efforts to de-escalate and to mitigate. And, again, we believe that distinguishes this from those cases where the lawyer continues through trial and continues to violate orders of the court. We also do view a monetary sanction as different than vacating a judgment. We find it much closer to what happened in Goodyear in terms of dollars going out of the pocket. And that's all I have. Again, we would ask the court to overturn the bad faith finding. If the court determines that's not appropriate, we would request that the $50,000 sanction and the anger management course be vacated from the order. Thank you. Thanks to both parties. Thank you very much. Thank you. Case will be taken under advisement. Now, we're going to take a five-minute break. Okay? And you can do whatever you want in those five minutes. Thank you.